Filed 5/24/23; Certified for Publication 6/15/23 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| TIM MCCONNELL et al., | D080532 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2022-00009244-CU-PT-CTL) |
| ADVANTEST AMERICA, INC., et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of San Diego County, Matthew C. Braner, Judge. Reversed.

Willkie Farr & Gallagher, Jonathan A. Patchen and Jennifer S. Maybee, for Petitioners and Appellants.

Debevoise & Plimpton, John M. Neukom; Skadden, Arps, Slate, Meagher & Flom, Abraham A. Tabaie; and Michael M. Powell (*pro hac vice*) for Defendants and Respondents.

INTRODUCTION

The California Arbitration Act (CAA; Code Civ. Proc., § 1280 et seq.)[1] confers upon an arbitrator the power to issue "[a] subpoena requiring the attendance of witnesses, and a subpoena duces tecum for the production of books, records, documents and other evidence, *at an arbitration proceeding*[.]" (§ 1282.6, subd. (a), italics added.)  Interpreting section 1282.6, subdivision (a), as a matter of first impression, the Court of Appeal in *Aixtron, Inc. v. Veeco Instruments, Inc.* (2020) 52 Cal.App.5th 360, 370 (*Aixtron*) concluded the subpoena provisions of the CAA did not give an arbitrator the power to issue "*prehearing* discovery subpoenas."  (Italics added.)

In this case, an arbitrator issued subpoenas to compel two individuals, who are not parties to the arbitration, to appear and produce documents at a hearing specially set "for the limited purpose of receiving documents" from them, or to download the documents to a website controlled by counsel for the party requesting the subpoenas.  The subpoenas provided that after the production of documents, the "hearing" would be adjourned to a later date, at which time the subpoenaed nonparties would be summoned to appear and testify.  The date for their compliance with the document production was nearly 12 months before the scheduled arbitration hearing on the merits.

After the nonparties refused to comply with the subpoenas, the arbitrator compelled compliance.  The nonparties petitioned the trial court to vacate the order compelling their compliance with the subpoenas.  The trial court denied the petition to vacate the order, concluding the subpoenas were statutorily authorized "hearing" subpoenas under section 1282.6, not

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

2

subpoenas issued for the purposes of discovery. The nonparties assert the judgment should be reversed because the subpoenas are improper discovery subpoenas, despite being labeled "hearing" subpoenas.

Under the specific facts of this case, we agree with the nonparties. Because we reverse the judgment on this ground alone, we need not and do not reach the nonparties' second contention that the subpoenas are unenforceable because the good cause affidavit filed in support of them failed to satisfy section 1985, subdivision (b).

FACTUAL AND PROCEDURAL BACKGROUND

I.

*The Business Dispute in the Underlying Arbitration*

In the underlying arbitration, Advantest America, Inc. and Advantest Test Solutions, Inc. (together, Advantest) assert claims against Samer Kabbani, its former senior executive; Lattice Innovation, Inc. (Lattice), a company Kabbani allegedly managed and majority-owned at the same he was working for Advantest; AEM Holdings Ltd. (AEM) which subsequently purchased Lattice; and Wavem US Inc.[2]

Advantest alleges Kabbani "improperly exploited" his position at Advantest and, without disclosing his ties to Lattice, arranged to have Lattice selected as one of Advantest's sub-suppliers and personally profited from the arrangement. Advantest also alleges Lattice "aided and abetted" Kabbani's wrongdoing by failing to provide Advantest the intellectual property and work product it had created under contract for Advantest, after Kabbani's dealings came to light.

---

[2] Neither the parties nor the record offer an explanation as to the relationship of Wavem US Inc. to the underlying business dispute.

When the company learned of his ties to Lattice, Advantest's lawyers interviewed Kabbani on June 5, 2020. At the end of the interview, Kabbani provided the lawyers with his personal cell phone to be forensically imaged for further investigation into his ties with Lattice. The investigation led to Advantest's arbitration claims against Kabbani, Lattice, AEM, and Wavem US Inc. (together, Arbitration Respondents).

II.

*Kabbani's Deletion of the WhatsApp Messaging Application*

During arbitration, Advantest learned Kabbani purposefully deleted the "WhatsApp"[3] messaging application from his cell phone before turning it over to Advantest's lawyers, on June 5, 2020. In November 2021, Advantest deposed Kabbani in the arbitrator's presence "regarding his use of and deletion of WhatsApp and messages from his phone." He admitted deleting the application while sitting in the conference room with Advantest lawyers present, and that deletion of the WhatsApp messaging application resulted in the loss of any WhatsApp messages he sent or received before June 5, 2020.[4]

Kabbani identified five people associated with Lattice with whom he "could potentially . . . have exchanged WhatsApp messages" regarding

---

[3] WhatsApp is a messaging application that uses "end-to-end encryption" which "ensures only you and the person you're communicating with can read or listen to what is sent, and nobody in between, not even WhatsApp." (<https://faq.whatsapp.com/820124435853543/?helpref=hc_fnav> [as of May 24, 2023], archived at <https://perma.cc/EK3M-KY4R>.) Kabbani testified he "like[d] using WhatsApp for certain communications. It's Highly encrypted and off the grid."

[4] In its letter to the arbitrator requesting issuance of the nonparty subpoenas at issue in this appeal, Advantest stated that Kabbani's counsel represented that the deleted WhatsApp messages are not recoverable from Kabbani's phone or back-up accounts.

4

Lattice's affairs." They included Appellants Tim McConnell (Lattice's former president and current consultant) and Don Bachelder (Lattice's senior engineer), as well as three others, including another Lattice employee and two persons formerly affiliated with Lattice's board. Kabbani testified he "[p]ossibly" used WhatsApp to discuss matters related to or regarding Lattice, including product development "from a design point of view." He did not recall using WhatsApp for "substantive business discussions regarding Lattice" or discussions regarding "Lattice's finances."

At the conclusion of Kabbani's deposition, Advantest requested "in light of Kabbani's deletion of his WhatsApp messages" that the arbitrator order Lattice to produce "*WhatsApp messages* between *Lattice employees . . .* and Kabbani." (Italics added.) The arbitrator found that such documents should have been produced as part of the Arbitration Respondents' "Rule 17 obligations and order[ed] their production" in Order No. 4.[5] Lattice did not comply with the order, apparently contending it lacked "possession, custody, or control over its employees' WhatsApp messages with . . . Kabbani, and can

_____

[5]     JAMS Rule 17 pertains to the exchange of information and provides in part: "(a) The Parties shall cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and other information (including electronically stored information ('ESI')) relevant to the dispute or claim immediately after commencement of the arbitration. They shall complete an initial exchange of all relevant, non-privileged documents, including, without limitation, copies of all documents in their possession or control on which they rely in support of their positions, and names of individuals whom they may call as witnesses at the Arbitration Hearing, within twenty-one (21) calendar days after all pleadings or notice of claims have been received. The Arbitrator may modify these obligations at the Preliminary Conference."
(<https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_Comprehensive_Arbitration_Rules-2021.pdf> [as of May 24, 2023], archived at <https://perma.cc/7GDM-PEKR>.)

produce them only with the voluntary consent of those Lattice employees" and "that such consent ha[d] not been granted."

## III.

### *The Nonparty Subpoenas*

After Lattice failed to produce the WhatsApp messages between its employees and Kabbani, Advantest requested the arbitrator "open[ ] the arbitration hearing early to obtain (via hearing subpoenas) WhatsApp messages between . . . Kabbani *and others* regarding Lattice business affairs." (Italics added.) Advantest provided the arbitrator with prepared subpoenas directed to the five individuals identified by Kabbani, including Appellants, with whom Kabbani potentially exchanged WhatsApp messages. The proposed subpoenas requested each recipient appear at the hearing bearing the documents called for by the subpoenas and indicated the hearing would then "be adjourned until a later date, at which point the subpoena recipient [would] be called to provide testimony."

The proposed subpoenas went beyond the original scope of WhatsApp messages exchanged between Kabbani and the five individuals previously identified by Kabbani. Advantest explained to the arbitrator that the proposed subpoenas also included requests "for *all other correspondence* with . . . Kabbani concerning the subject matter of Lattice business, in addition to WhatsApp messages," because, as Advantest asserted, "all of the documents will ultimately be necessary to litigate this arbitration." (Italics added.) Thus the documents requested in the proposed subpoenas included:[6]

---

[6] The parties' citations to the proposed subpoenas are to objections filed by Appellants and a letter to the arbitrator. Accordingly, we rely on the parties' summaries of the proposed subpoenas, which appear similar to the redrafted subpoenas signed and issued by the arbitrator, which are in the record on appeal.

Messages " 'using WhatsApp, SMS, MMS, iMessage, Signal Telegram, Wickr, WeChat and/or any other messaging service or platform concerning or relating to Lattice or the subject matter of Lattice's business' "; "messages (from any messaging service or platform) not only to and from . . . Kabbani but encompass 'employees or independent contractors associated with . . . Kabbani, D&K Engineering, FusionX, Lattice, AEM, or any agents of the foregoing parties' "; and "*email correspondence* from all email accounts (including personal email accounts) 'relating to Lattice or the subject matter of Lattice's business.' "

The Arbitration Respondents objected to the issuance of the nonparty subpoenas, on four grounds: (1) the document requests were "overbroad" and Advantest made no showing they contain "material evidence relevant to any claim" in the arbitration; (2) "the list of individuals subject to the third party subpoenas broaden[ed] without justification those implicated beyond employees of Lattice"; (3) the period requested was "unnecessarily and unreasonably overbroad"; and (4) "the proposed subpoenas [we]re procedurally deficient on their face" under section 1985. The Arbitration Respondents asserted that "[d]espite the clear focus of both the Kabbani deposition and Order No. 4 on WhatsApp messages between . . . Kabbani and Lattice employees, Advantest's third party subpoenas [were] considerably broader—in scope, subject matter, and targeted individuals—and not tethered to any claims in this [a]rbitration."

After hearing argument, the arbitrator issued Order No. 6 overruling the Arbitration Respondents' objections and granting Advantest's request for issuance of the subpoenas, with modifications. The arbitrator rejected the Arbitration Respondents' objection that it was inappropriate to expand the scope to applications other than WhatsApp, finding that "[w]hile Kabbani

7

may have some of the [non-WhatsApp] documents requested, it is more than plausible that Kabbani deleted individual messages or communications on other applications as a regular practice. As such, expanding the scope beyond WhatsApp is reasonable and avoids issuing a later subpoena to these individuals for additional documents." The arbitrator also rejected the Arbitration Respondents' objection to the subpoenas including individuals who are not employed by Lattice or the parties, finding that "Kabbani testified that he communicated with these individuals regarding Lattice; as such, *they are likely to have discoverable information.*" (Italics added.)

However, the arbitrator found merit in two of the Arbitration Respondents' objections. He agreed the proposed date range of "January 1, 2017 to the present" was overbroad and accordingly narrowed the date range to "May 1, 2017 to December 31, 2020"; and that "asking for all documents related to Lattice was overbroad as that would likely go beyond communications with Kabbani" and thus narrowed the scope to "Lattice's finances, Lattice's business in the semiconductor industry, Active Thermal Interposer related technology, semiconductor test technology, Advantest, and Astronics."[7]

Advantest redrafted the subpoenas to conform to Order No. 6 and the arbitrator signed them. The subpoenas, entitled as an "arbitration subpoena to appear and present documentary evidence at an arbitration hearing" (capitalization omitted), stated:

> "By the authority conferred on the undersigned Arbitrator by Cal. Code Civ. Proc. §§ 1985 and 1282.6 (c), you are hereby summoned to attend as a witness at a hearing to be

---

[7] The Arbitration Respondents and Advantest also litigated and the arbitrator made rulings on whether Advantest complied with the good cause requirements of section 1985, subdivision (b), an issue we do not reach.

8

held on January 28, 2022 at 10:00 AM (PST) at JAMS San Diego, <u>401 B Street, Suite 2100, San Diego, CA 92101</u> or via remote audiovisual conference on Zoom, as agreed upon by the parties, and to bring with you to the hearing *or upload to the FTP site (described below) the documents* identified in Schedule A annexed to this SUBPOENA, *which hearing shall thereafter be adjourned to a later date, at which time you are further summoned to appear and to testify.*" (Italics added.)

Schedule A identified the documents requested as two categories:

"1. All messages in your possession, custody, or control exchanged using WhatsApp, SMS, MMS, iMessage, Signal, Telegram, Wickr, WeChat, and/or any other messaging service or platform dating from May 1, 2017 to December 31, 2020, and concerning or relating to (i) Lattice's finances, (ii) Lattice's business in the semiconductor test industry, (iii) ATI-related technology, (iv) semiconductor test technology, or (v) Advantest or Astronics, including all messages sent to or from employees or independent contractors associated with . . . Kabbani, D&K Engineering, FusionX, Lattice, AEM, or any agents of the foregoing parties.

"2. All correspondence sent or received from all email accounts controlled or accessible by you (including personal email accounts), other than a Lattice email account, dating from May 1, 2017 to December 31, 2020, and concerning or relating to (i) Lattice's finances, (ii) Lattice's business in the semiconductor test industry, (iii) ATI-related technology, (iv) semiconductor test technology, or (v) Advantest or Astronics."

The subpoenas also contained an attached list of governing "Definitions."[8] (Boldface omitted.) As one example, " 'Lattice' " named in Schedule A was defined to include "its directors, officers, managers, members, current and former employees, counsel, agents, consultants,

---

[8] The Definitions and Schedule A are appended to this opinion. (See appendix A, *post*.)

9

representatives, and any other persons acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by these entities and all predecessors and successors in interest to such entities."

Also attached to the subpoenas was Exhibit B, instructions on how to upload the requested documents to an FTP website apparently hosted and maintained by counsel for Advantest:  https://secureftp.skadden.com.

As previously noted, the subpoenas summoned Appellants "to attend as a witness at a hearing to be held on January 28, 2022" at the JAMS San Diego office "or via remote audiovisual conference on Zoom."  However, as the arbitrator described in a subsequent order, "the arbitrator convened the arbitration hearing . . . *for the limited purpose of receiving documents from subpoenaed third parties.*"  (Italics added.)  And although compliance with the document requests was set for January 28, 2022, the arbitration hearing on the merits was not to occur until December 5 through 16, 2022, almost one year later.  Advantest served the subpoenas on Appellants.

IV.

*Advantest's Request to Compel Appellants' Compliance with the Subpoenas*

At the January 28, 2022 hearing to receive the documents, counsel for Appellants appeared without the subpoenaed documents and informed the arbitrator that Appellants would not comply with them.  Advantest then filed a request to compel compliance with the subpoenas.  Appellants opposed the request.  Relying on *Aixtron, supra,* 52 Cal.App.5th at page 391, Appellants argued an arbitrator in a private, contractual arbitration cannot compel a nonparty to the arbitration to respond to a subpoena duces tecum for

10

production of documents issued by the arbitrator " 'for the purposes of discovery,' " and, however they are labeled, these were improper discovery subpoenas.

After considering briefing and argument on February 14, 2022, the arbitrator issued Order No. 11 granting Advantest's request to compel Appellant's compliance with the subpoenas. The arbitrator rejected Appellant's argument that the subpoenas were improper discovery subpoenas and concluded *Aixtron* did not preclude his power to issue them, because *Aixtron* "dealt with a discovery subpoena not a hearing subpoena." In so ruling, the arbitrator stated that Appellant's counsel "conceded" that section 1282.6, subdivision (a), conferred upon an arbitrator "the power to issue document subpoenas to non-parties for production at the arbitration hearing," and that under section 1282, subdivision (b), the arbitrator "has the power to convene an arbitration hearing and then adjourn it to another date."[9]

V.

*Appellants' Petition to Vacate Arbitration Discovery Order*

Appellants petitioned the trial court to vacate Order No. 11 compelling their compliance with the subpoenas. The trial court issued a tentative ruling denying Appellants' petition to vacate compliance with the subpoenas. During oral argument, the court agreed with Appellants' counsel that the subpoenas effectively constituted "a work-around" from the prohibition against nonparty discovery, but stated, "I don't agree that it's not a legal

---

[9] We note that at the hearing on the motion to compel, Appellants' counsel—in response to the arbitrator's question "do I have the power to open a hearing for a limited purpose such as getting documents and then continuing for 10 months?"—responded, "I would argue no you don't. Because that is effectively conducting discovery."

work-around." After hearing argument, the trial court confirmed its tentative ruling.

The trial court found it was "undisputed that, on its face, the [s]ubpoena states it is a hearing subpoena and, thus, is a subpoena authorized" by section 1282.6. It rejected Appellants' argument that the court should look "beyond the plain language" of the subpoena and find they are "actually a 'discovery' subpoena." It held that the "numerous indicators" which Appellants contend support such a finding were not dispositive because the key distinction between a discovery subpoena and a hearing subpoena was whether the demand required production "at a hearing." Because the subpoenas demanded the production of evidence at a hearing, it concluded they "me[t] the requirements of *Aixtron*" and were hearing subpoenas.

## DISCUSSION

### I.

### *Standard of Review*

"The question whether an arbitrator in a private, contractual arbitration can compel a nonparty to the arbitration to respond to a subpoena duces tecum for the production of business records issued by the arbitrator for the purposes of discovery is a question of law, which we review de novo." (*Aixtron*, *supra*, 52 Cal.App.5th at p. 391.) To the extent this question requires us to construe a statute; determine whether the arbitrator exceeded his or her powers; or apply law to undisputed facts—these are also questions which we review de novo. (See *United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1089 (*United Riggers*) [statutory interpretation is "an issue of law, which we review de novo"]; *Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 918, fn. 1 ["whether the arbitrator

exceeded his [or her] powers . . . is generally reviewed on appeal de novo"];
*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018 [where
the "issue involves the application of law to undisputed facts, we review the
matter de novo"].) But where the trial court made factual findings based on
disputed facts, we review those findings for substantial evidence. (*Cooper v.
Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 11–12.)

II.

*Discovery in Arbitration Proceedings*

California law reflects a strong public policy favoring contractual
arbitration as an expeditious and economical means of dispute resolution.[10]
(*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*
(1983) 35 Cal.3d 312, 322.) "[A] limitation on discovery is one important
component of the 'simplicity, informality, and expedition of arbitration.' "
(*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th
83, 106, fn. 11, abrogated in part on another ground in *ATT Mobility LLC v.
Concepcion* (2011) 563 U.S. 333, quoting *Gilmer v. Interstate/Johnson Lane
Corp.* (1991) 500 U.S. 20, 33.) For that reason, "[t]he right to discovery in
arbitration proceedings under the CAA 'is generally limited' and 'highly

---

[10] Although normally the first step in reviewing an arbitration dispute is
to determine whether the question presented is subject to the Federal
Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) (see *Aixtron, supra,* 52 Cal.App.5th
at p. 391), neither Appellants nor Advantest have taken the position that the
FAA applies to this arbitration. Moreover, the arbitration agreement
between Advantest and the Arbitration Respondents is not part of the record
on appeal and thus the default rules and procedures in the Code of Civil
Procedure apply. (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066,
1087 ["When parties agree to resolve statutory claims through arbitration, it
is reasonable to infer that they consent to abide by the substantive and
remedial provisions of the [CAA]."].) We also note that Advantest relied on
the CAA in its request to compel Appellant's compliance with the subpoenas.

restricted.' " (*Aixtron, supra,* 52 Cal.App.5th at p. 395, quoting *Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528, 534 (*Berglund*); accord *Alexander v. Blue Cross of California* (2001) 88 Cal.App.4th 1082, 1088 [right to discovery is generally "highly restricted in arbitration proceedings"].)

The CAA grants arbitrators authority over discovery in certain arbitration proceedings. "Section 1283.05 describes the circumstances under which 'depositions may be taken and discovery obtained in arbitration proceedings,' as well as the powers of the arbitrator with regard to such discovery." (*Aixtron, supra,* 52 Cal.App.5th at p. 395.) The discovery authorized in section 1283.05, however, is limited to arbitration of a claim for wrongful death or for personal injury (§ 1283.1, subd. (a); see *Berglund, supra,* 44 Cal.4th at p. 535), and in all other arbitrations, the arbitrator may grant discovery "[o]nly if the parties by their agreement so provide" (§ 1283.1, subd. (b); *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1802.) "Unquestionably, discovery is limited in arbitrations (except in injury or death cases or where the parties have expressly agreed otherwise)." (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 690, fn. 9.)

Section 1282.6, at issue in this appeal, governs the issuance of subpoenas. Subdivision (a) of section 1282.6 provides:

> "A subpoena requiring the attendance of witnesses, and a subpoena duces tecum for the production of books, records, documents and other evidence, at an arbitration proceeding or a deposition under [s]ection 1283, *and if [s]ection 1283.05 is applicable, for the purposes of discovery*, shall be issued as provided in this section. In addition, the neutral arbitrator upon their own determination may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents, and other evidence." (Italics added.)

14

There is a paucity of case law addressing section 1282.6. The seminal case is *Aixtron*, *supra*, 52 Cal.App.5th 360. There, as a matter of first impression, the appellate court interpreted subdivision (a) of section 1282.6 to address the question whether this statute allows an arbitrator to issue a "prehearing discovery subpoena[ ]" on a nonparty. (*Aixtron,* at pp. 370, 373.)

In *Aixtron*, a party to the arbitration proceeding announced it would be seeking " 'prehearing discovery' " from a nonparty to the arbitration. (*Aixtron*, *supra*, 52 Cal.App.5th at p. 374.) The party then circulated a proposed subpoena for production of the nonparty's business records, "which demanded 16 different categories of documents and the production of certain [of the nonparty's] computers." (*Id.* at p. 375.) After the parties disputed the scope of the subpoena, the arbitrator modified the language of two demands and approved the subpoena, as modified, for service. (*Id.* at p. 376.) The nonparty refused to comply with the subpoena and the arbitrator granted a motion to compel compliance. (*Id.* at p. 377.) The trial court denied the nonparty's petition for a protective order and for rehearing, and the nonparty appealed. (*Id.* at pp. 378, 380.)

The *Aixtron* court concluded the parties did not provide for discovery in their arbitration agreement and section 1283.05 did not apply because the dispute did not involve a claim for wrongful death or personal injury. (*Aixtron*, *supra*, 52 Cal.App.5th at pp. 396, 397.) The court then interpreted subdivision (a) of section 1282.6 as limiting an arbitrator's power to issue " 'a subpoena requiring the attendance of witness, and a subpoena duces tecum for the production of books, records, documents and other evidence' " to three circumstances: "(1) 'at an arbitration proceeding'; (2) at 'a deposition under Section 1283,' and (3) '*if Section 1283.05 is applicable*, for the purposes of discovery.' " (*Aixtron*, at p. 398.)

15

The court found "[t]he first circumstance for which a subpoena may be used to compel the attendance of witnesses and the production of evidence is 'at an arbitration proceeding.' " (*Aixtron, supra*, 52 Cal.App.5th at p. 398.) But it concluded this circumstance did not apply because the plain language of this phrase meant a hearing before an arbitrator or panel of arbitrators. (*Ibid.*) Because the subpoena at issue "did not demand that [the nonparty] produce documents or other evidence (its computers) for an arbitration hearing," the court concluded it "was a discovery subpoena." (*Ibid.*)

The court found the "second circumstance for which a subpoena may be used to compel attendance of witnesses and production of documents is at 'a deposition under [s]ection 1283.' " (*Aixtron, supra*, 52 Cal.App.5th at p. 398.) Section 1283 provides that an arbitrator, on application of a party, "may order the deposition of a witness to be taken for use as evidence *and not for discovery* if the witness cannot be compelled to attend the hearing or if exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally at the hearing." (Italics added.) The *Aixtron* court observed that "[n]otably, *section 1283 underscores the importance of presenting the testimony of witnesses orally at the hearing* (i.e., live testimony before the arbitrator)." (*Aixtron*, at p. 398, italics added.) It then concluded the subpoena at issue was "not for a deposition for evidentiary purposes under section 1283." (*Ibid.*)

Last, the court found "[t]he third circumstance for which a subpoena may be used in arbitration to compel attendance of witnesses and production of evidence is 'if [s]ection 1283.05 is applicable, for the purposes of discovery.' " (*Aixtron, supra*, 52 Cal.App.5th at pp. 398–399.) The court construed the statute's plain language here to mean "the procedures for

16

issuing subpoenas described in section 1282.6 may only be used for purposes of discovery if section 1283.05 applies." (*Id*. at p. 399.) Here, the court had already found that section 1283.05 was inapplicable because the dispute did not involve a claim for wrongful death or personal injury. (*Aixtron,* at pp. 396–397.)

In addition to the language of section 1282.6, the *Aixtron* court further relied on the legislative history to conclude that the subpoena authorized under the statute "was intended to be used to compel the attendance of witnesses and the production of documents and other evidence at the arbitration hearing only and not for discovery purposes." (*Aixtron*, *supra*, 52 Cal.App.5th at p. 401.) The court took specific notice of the Law Revision Commission report that led to the enactment of section 1282.6 as part of the 1961 overhaul of the CAA, which stated " ' "[i]t would be most unwise and inappropriate in an arbitration proceeding to permit the taking of depositions . . . for discovery purposes of the parties" ' and opined that subpoenas duces tecum should not be used 'for the purpose of a "fishing expedition." ' " (*Aixtron,* at p. 401.)

## III.

*The Subpoenas Issued on Appellants Were Unauthorized Discovery Subpoenas*

Appellants agree arbitrators have the power to issue subpoenas to nonparties to an arbitration proceeding under section 1282.6. But they contend the subpoenas here were improper discovery subpoenas, however they are labeled. They claim that because *Aixtron, supra*, 52 Cal.App.5th 360, precludes discovery subpoenas, Advantest crafted a "work-around" by requesting the arbitrator issue hearing subpoenas requiring Appellants to produce the subpoenaed documents at an arbitration hearing. They assert

17

the trial court erred in permitting the workaround and improperly examined only the form and title of the subpoenas without considering their purpose.

Advantest claims Appellants' characterization of the subpoenas as for discovery misses the point in that "[t]he 'purpose' of an Arbitration Proceeding Subpoena like the Hearing Subpoenas here is compelling the provision of evidence 'at an arbitration proceeding' before an arbitrator, full stop." Citing *Aixtron, supra*, 52 Cal.App.5th 360, Advantest argues courts are not required to examine the purpose of a subpoena and Appellants' approach should be rejected.

As the *Aixtron* court found, and we agree, the plain language of section 1282.6 allows the issuance of "[a] subpoena requiring the attendance of witnesses, and a subpoena duces tecum for the production of books, records, documents and other evidence, at an arbitration proceeding[.]" (*Aixtron, supra*, 52 Cal.App.5th at p. 398.) Because the subpoenas satisfied this plain language requirement for a hearing subpoena, Advantest asserts the analysis is over because "the *Aixtron* court treated the fact that a subpoena calls for the provision of evidence at an arbitration hearing as the *sine qua non* of an Arbitration Proceeding Subpoena, with no further analysis required." We reject this contention.

A case is not authority for a proposition not considered therein or an issue not presented by its own particular facts. (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2; *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 348 ["A decision, of course, is not authority for what it does not consider."].) In *Aixtron*, *supra*, 52 Cal.App.5th 360, the court was called upon to consider a subpoena seeking 16 categories of documents, that did not require production of the documents at an arbitration proceeding and was described by the party seeking it as being for "discovery." (*Id.* at pp. 374, 375

18

& 377, fn. 4.) *Aixtron* did not address the circumstances before us where the subpoenas included a requirement that the document production take place at a hearing specially set for the limited purpose of receiving the subpoenaed documents.

We reject Advantest's contention that because the subpoenas required production of the documents at a hearing, our analysis ends. If this were the case, parties to an arbitration proceeding could avoid the prohibition against nonparty discovery, and demand any manner of documents, by simply requiring the nonparty produce the documents at an arbitration proceeding. We reject Advantest's literal reading of section 1282.6 because it would defeat the purpose of the statutory scheme and lead to absurd results. To paraphrase the *Aixtron* court: "To construe section 1282.6 as granting arbitrators unlimited power to issue discovery subpoenas as long as the subpoena is [labeled a hearing subpoena], is inconsistent with the limitations on discovery in sections 1283.05 and 1283.1. Such an interpretation would also nullify the limits on discovery in sections 1283.05 and 1283.1, rendering both sections superfluous." (*Aixtron*, *supra*, 52 Cal.App.5th at p. 402.)

Turning to the undisputed facts before us, although the subpoenas required the document production at a hearing presided over by the arbitrator, the hearing was limited to the arbitrator appearing only for so long as needed for the documents to be collected with the intent that the hearing be adjourned for nearly 12 months, at which time Appellants would later be summoned to testify. The subpoenas also allowed Appellants to upload the documents to a website controlled by Advantest's counsel. There is no indication in the record showing the arbitrator would have access to this website to review or evaluate the purported evidence. This defeats the purpose of production at a hearing which gives the arbitrator control over

19

what is produced, such as ruling on objections and ordering redactions. As explained by one federal court addressing the FAA:[11]

> "The requirement that document production be made at an actual hearing may, in the long run, discourage the issuance of large-scale subpoenas upon non-parties. This is so because parties that consider obtaining such a subpoena will be forced to consider whether the documents are important enough to justify the time, money, and effort that the subpoenaing parties will be required to expend if an actual appearance before an arbitrator is needed. Under a system of pre-hearing document production, by contrast, there is less incentive to limit the scope of discovery and more incentive to engage in fishing expeditions that undermine some of the advantages of the supposedly shorter and cheaper system of arbitration." (*Hay Group v. E.B.S. Acquisition Corp.* (3d Cir. 2004) 360 F.3d 404, 409 (*Hay Group*).)

Subdivision (a) of section 1282.6 requires "the attendance of witnesses" at the arbitration proceeding. Section 7 of the FAA, titled "Witnesses before arbitrators; fees; compelling attendance" contains a similar requirement. It reads in relevant part, as follows:

> "The arbitrators selected either as prescribed in this title . . . or otherwise, or a majority of them, may summon in writing any person to *attend before them or any of them as a witness* and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." (*Ibid.,* italics added.)

A majority of federal courts interpret the italicized language in section 7 of the FAA as authorizing arbitral summonses for a person to physically appear before the arbitrator to provide testimony and documents. (See *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.* (11th Cir.

---

[11]    Although the parties briefed this appeal under the CAA, we refer to the FAA based on its similarity to the CAA.

2019) 939 F.3d 1145, 1159–1160 ["[T]he FAA implicitly withholds the power to compel documents from non-parties without summoning the non-party to testify. And if Congress intended the arbitrators to have the broader power to compel documents from non-parties without summoning the non-party to testify, it could have said so. Accordingly, we conclude that 9 U.S.C. § 7 does not permit pre-hearing depositions and discovery from non-parties."]; *CVS Health Corp. v. Vividus, LLC* (2017) 878 F.3d 703, 708 (*CVS Health*); *Life Receivables Trust v. Syndicate 102 at Lloyd's of London* (2d Cir. 2008) 549 F.3d 210, 216–217 & p. 218 [FAA "[s]ection 7's presence requirement . . . forces the party seeking the non-party discovery—and the arbitrators authorizing it—to consider whether production is truly necessary."].) There is a minority view holding that section 7 of the FAA gives arbitrators implicit "power to order the production of relevant documents for review by a party prior to the hearing." (*Security Life Ins. Co. of Am. v. Duncanson & Holt* (8th Cir. 2000) 228 F.3d 865, 870–871 (*Security Life*); *COMSAT Corp. v. Nat'l Science Found.* (4th Cir. 1999) 190 F.3d 269, 276 [noting a party may be able to compel pre-arbitration discovery "under unusual circumstances" and "upon a showing of special need or hardship"].)

At the hearing on Appellants' petition to vacate Order No. 11, the trial court appeared to rely on the minority view expressed in *Security Life, supra*, 228 F.3d 865, that arbitrators have the "implicit" power "to order the production of relevant documents for review by a party prior to the hearing." (*Id.* at pp. 870–871.) The *Aixtron* court, however, adopted the majority view, as expressed by the Ninth Circuit in *CVS Health, supra*, 878 F.3d at page 703, that arbitrators do not have the implicit power to order document discovery from nonparties for review by a party prior to a hearing. (*Aixtron,*

21

*supra*, 52 Cal.App.5th at p. 395.) We also adopt the majority view and reject the minority view relied on by the trial court.

Additionally, the chronology of events and the subpoenas themselves, show they went far beyond the deleted WhatsApp messages, the original reason for issuing the subpoenas. Based on Kabbani's purposeful deletion of his WhatsApp messaging application from his cell phone before he turned it over to Advantest, the arbitrator ordered Lattice to produce copies of all WhatsApp messages between Kabbani and Lattice employees finding that the documents should have been produced as part of the Arbitration Respondents' "Rule 17 obligations and orders their production." When Lattice claimed it lacked control of the messages, Advantest turned to Appellants, as the recipients of Kabbani's messages to obtain this evidence. Advantest argued to the arbitrator that the subpoenas were not for discovery but for "the collection of *evidence* for the hearing in this matter."

We agree that Advantest was entitled to obtain from Appellants *evidence* that it could not obtain from Kabbani; namely, the WhatsApp messages exchanged between Kabbani and Appellants regarding Lattice. The subpoenas, however, went far beyond obtaining these messages— evidence that was known to exist. The subpoenas turned into discovery when they were expanded to seek, among other things, "all messages sent to or from" unidentified employees or independent contractors associated with Kabbani, Lattice, and three other entities on WhatsApp, to messages sent on seven other messaging applications and "any other messaging service or platform" concerning or relating to "(i) Lattice's finances, (ii) Lattice's business in the semiconductor test industry, (iii) ATI-related technology, (iv) semiconductor test technology, or (v) Advantest or Astronics." When the arbitrator rejected the Arbitration Respondents' objection to the subpoenas

22

including individuals who are not employed by Lattice or the parties, he implicitly acknowledged they were discovery subpoenas in his finding that "Kabbani testified that he communicated with these individuals regarding Lattice, as such, *they are likely to have discoverable information*." (Italics added.)

There also is no evidence in the record showing Kabbani communicated with Appellants using these other messaging services. In fact, citing Kabbani's deposition transcript, Appellants' counsel informed the arbitrator that Kabbini testified he did not remove any other applications from his phone before turning it over for forensic imaging. Rather, the arbitrator speculated "Kabbani deleted individual messages or communications on other applications as a regular practice" and concluded that "expanding the scope beyond WhatsApp [was] reasonable and avoid[ed] issuing a later subpoena to these individuals for additional documents." Even assuming Kabbani and Appellants had used a non-WhatsApp messaging platform, there is no evidence in the record showing Kabbani deleted any messages existing on those platforms and thus Advantest could seek such evidence from the Arbitration Respondents directly, rather than from the nonparty Appellants.

The subpoenas also seek documents in five broad categories. For example, the term "finances" is so broad as to potentially refer to financial information that is entirely irrelevant to this arbitration proceeding such as how much Lattice paid its employees. Assuming the term "finances" refers to financial statements like cash flow statements, income statements, profit and loss statements, and balance sheets, Advantest has not explained why it cannot seek this information directly from the Arbitration Respondents.

In their arbitration agreement, Advantest and the Arbitration Respondents did not agree to the full panoply of discovery under California's

23

Civil Discovery Act (§ 2016.010 et seq.). They are bound by their agreement. Our independent review of the subpoenas and the record leading to their issuance shows their clear purpose was for discovery. Because discovery is not a permissible purpose of an arbitration hearing subpoena, the arbitrator abused his discretion by overstepping his statutory authority under section 1282.6. Accordingly, under the specific facts presented here, we conclude the trial court erred when it denied Appellants' petition to vacate the arbitration discovery order and entered judgment in Advantest's favor.

## DISPOSITION

The judgment is reversed and the trial court is directed to enter an order granting Appellants' petition to vacate the arbitration discovery order. Appellants are entitled to their costs on appeal.

DO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.

24

# APPENDIX

## A.

### Definitions

1. "Advantest America" means Advantest America, Inc. and its directors, officers, managers, members, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by these entities and all predecessors and successors in interest to such entities. "Advantest America" should not be interpreted to include Samer Kabbani.

2. "Advantest Test Solutions" or "ATS" means Advantest Test Solutions, Inc. and its directors, officers, managers, members, current and former employees (with the exception of Samer Kabbani), counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by these entities and all predecessors and successors in interest to such entities.

3. "Advantest" means, collectively, Advantest America and Advantest Test Solutions, as defined above.

4. "Astronics" means Astronics Corporation and its directors, officers, managers, members, current and former employees (with the exception of Samer Kabbani), counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by these entities and all predecessors and successors in interest to such entities.

5. "DUT" means device under test, as commonly understood in the semiconductor test industry.

6. "Active thermal interposer" or "ATI" or "interposer" broadly refers to an apparatus that serves as a thermally conductive interface between a DUT and a semiconductor tester, and generally conforms to the shape of the DUT.

7. "Lattice" means Lattice Innovation, Inc. and its directors, officers, managers, members, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by these entities and all predecessors and successors in interest to such entities. "Lattice" includes any divisions, lines of business, operations, or teams relating to products, technologies, customers, or other operations performed by Lattice Innovation, Inc. prior to its acquisition by AEM and Wavem, and subsequently continued by AEM and Wavem.

8. "AEM" means AEM Holdings Ltd. and its directors, officers, managers, members, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by these entities and all predecessors and successors in interest to such entities.

9. "D&K Engineering" means D&K Engineering, Inc. and its directors, officers, managers, members, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by these entities and all predecessors and successors in interest to such entities.

26

10. "FusionX" means FusionX Ventures and all its partners, officers, managers, members, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by these entities and all predecessors and successors in interest to such entities.

11. The terms "relating to," "relate to," "referring to" and "refer to" mean relating to, reflecting, referring to, concerning, mentioning, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

12. The terms "include" and "including" means including without limitation.

13. The term "all" includes and encompasses "any" and "each."

14. The terms "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Interrogatories.

15. Use of the singular shall be read as including the plural and vice-versa.

16. Use of a verb in any tense shall be construed as the use of the verb in all other tenses.

Schedule A – Document Requests

Document Requests

1. All messages in your possession, custody, or control exchanged using WhatsApp, SMS, MMS, iMessage, Signal, Telegram, Wickr, WeChat, and/or any other messaging service or platform dating from May 1, 2017 to December 31, 2020, and concerning or relating to (i) Lattice's finances, (ii) Lattice's business in the semiconductor test industry, (iii) ATI- related technology, (iv) semiconductor test technology, or (v) Advantest or Astronics, including all messages sent to or from employees or independent contractors associated with Mr. Kabbani, D&K Engineering, FusionX, Lattice, AEM, or any agents of the foregoing parties.

2. All correspondence sent or received from all email accounts controlled or accessible by you (including personal email accounts), other than a Lattice email account, dating from May 1, 2017 to December 31, 2020, and concerning or relating to (i) Lattice's finances, (ii) Lattice's business in the semiconductor test industry, (iii) ATI-related technology, (iv) semiconductor test technology, or (v) Advantest or Astronics.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TIM MCCONNELL et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>ADVANTEST AMERICA, INC., et al.,<br><br>    Defendants and Respondents. | D080532<br><br><br>(Super. Ct. No. 37-2022-00009244-CU-PT-CTL)<br><br><br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed May 24, 2023 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

HUFFMAN, Acting P. J.

Copies to:  All parties

2